# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL JUAREZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ALAMEDA, et al.,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. 1:04-cv-05668-LJO-GSA PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING (1) PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT BE DISREGARDED AS UNTIMELY, (2) PLAINTIFF'S RULE 56(F) MOTION BE DENIED, (3) DEFENDANTS' MOTION TO SEAL BE GRANTED, AND (4) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(Docs. 92, 94, and 104)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations**

I.   **Summary of Proceedings**

　　Plaintiff Manuel Juarez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's amended complaint, filed March 7, 2005, against Defendants Verdin, Gentry, Haws, Fischer, Schmidt, and Travers ("Defendants") for denial of due process, in violation of the Fourteenth Amendment of the United States Constitution. Plaintiff alleges that Defendants were involved in validating him an associate of the Mexican Mafia and imposing an indeterminate Security Housing Unit term on him without notice and an opportunity to be heard and without evidentiary support for their decision.

On October 18, 2007, Defendants filed a motion for summary judgment. (Docs. 94-96.) Plaintiff filed an opposition and cross-motion for summary judgment on January 18, 2008, and Defendants filed a reply and opposition on February 21, 2008.[1] (Docs. 104, 107.)

## II. Plaintiff's Cross-Motion for Summary Judgment and Motion for Continuance to Conduct Further Discovery

The deadline for filing pretrial dispositive motions was September 10, 2007. (Doc. 71.) Pursuant to the Court's order of September 18, 2007, Defendants were granted a thirty-day extension of the deadline. (Doc. 87.) Defendants timely filed their motion and Plaintiff was subsequently granted two extensions of time to oppose the motion. When Plaintiff filed his opposition, he also moved for summary judgment. Plaintiff's cross-motion for summary judgment was untimely. Plaintiff was granted an extension of time to file an opposition but the pretrial dispositive motion deadline was not extended. Therefore, the Court declines to consider Plaintiff's untimely cross-motion for summary judgment and will address the filing only to the extent it functions as Plaintiff's opposition.

Plaintiff opposes Defendants' motion in part pursuant to Federal Rule of Civil Procedure 56(f) on the ground that he is entitled to discovery. Rule 56(f) permits the Court to continue a motion for summary judgment so that a party may obtain discovery necessary to oppose the motion. Fed. R. Civ. P. 56(f). In order to prevail on a Rule 56(f) motion, the party "must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." State of California v. Campbell, 138 F.2d 772, 779 (9th Cir. 1998).

The deficiencies of Plaintiff's Rule 56(f) motion, notwithstanding, the deadline for the completion of all discovery was July 10, 2007. (Doc. 71.) Because the discovery phase of this litigation had concluded by the time Defendants filed their motion for summary judgment, Plaintiff

---

[1] The parties' requests for judicial notice of court documents in support of the motion and opposition are granted. (Docs. 96, 104.) "Judicial notice is properly taken of orders and decisions made by other courts or administrative agencies." Papai v. Harbor Tug And Barge Co., 67 F.3d 203, 207 n.5 (9th Cir. 1995) (reversed on other grounds by Harbor Tug and Barge Co. v. Papai, 520 U.S. 548 (1997)). However, the Court may not take judicial notice of "the truth of the facts recited therein . . . ." Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001).

2

1  may not obtain a continuance of the motion to conduct further discovery and his motion must be
2  denied.

3  **III.    Defendants' Motion to Seal**

4  On October 18, 2007, in conjunction with their motion for summary judgment, Defendants
5  filed a motion for *in camera* review and to seal for one hundred years Plaintiff's gang validation
6  package. (Doc. 92.) Plaintiff filed an opposition on November 5, 2007. (Doc. 98.)

7  Plaintiff's concern is that some form of review of the material used to validate him be
8  conducted. Defendant Verdin, who was trained in gang activity and in identifying gang members
9  and associates, and who prepared the gang validation package at issue, has attested under penalty of
10 perjury that disclosure of the gang validation package would endanger institutional security. (Doc.
11 95-2, Verdin Dec., ¶4.) In light of this attestation and given that *in camera* review is a permissible
12 methods of determining the reliability of the information used to validate Plaintiff, the Court
13 recommends that Defendants' motion to seal the gang validation package be granted. Zimmerlee
14 v. Keeney, 831 F.2d 183, 186-87 (9th Cir. 1987). Plaintiff's motion for the production of documents
15 and other discovery, set forth in his opposition to Defendants' motion to seal, is disregarded. As
16 previously set forth, discovery is closed.

17 **IV.    Defendants' Motion for Summary Judgment**

18     **A.    Summary Judgment Standard**

19 Summary judgment is appropriate when it is demonstrated that there exists no genuine issue
20 as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.
21 Civ. P. 56(c). Under summary judgment practice, the moving party

22> [A]lways bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
23> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
24> demonstrate the absence of a genuine issue of material fact.

25 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the
26 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made
27 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"
28 Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(e). Plaintiff's amended complaint is verified and will be considered by the Court in resolving Defendant's motion to the extent that it sets forth admissible facts.[2] The parties

---

[2] Plaintiff also submitted a declaration in support of his opposition. However, Plaintiff's opposition itself is not verified and with the exception of the declaration, may not be treated as an opposing affidavit. Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

**B.   Undisputed Facts**

1. During 1999, and 2000, Plaintiff was incarcerated at California Correctional Institution at Tehachapi (Tehachapi).

2. Before the Castillo Settlement Agreement, it was the established procedure at most institutions, including Tehachapi, to submit the gang validation package to Law Enforcement Investigation Unit (LEIU) without providing information to the inmate under review. If the LEIU accepted the information and validated an inmate as a gang associate, the prison would then provide the inmate with the non-confidential information in the gang validation package, and an opportunity to be heard at a committee meeting to determine whether the inmate would be sentenced to a SHU term for gang association.[3]

3. Institutional Gang Investigation (IGI) staff were responsible for screening confidential informants to ensure that the information provided was reliable.

4. On March 15, 2000, Defendant Verdin, a Tehachapi IGI Officer, submitted a gang validation package to the LEIU in Sacramento, detailing information linking Plaintiff to the Mexican Mafia prison gang. The package contained four separate memoranda describing four sets of facts linking Plaintiff to the Mexican Mafia prison gang. Validation of an inmate as a gang member or associate requires information from a minimum of three independent sources, identifying the prisoner as a gang member or associate.

5. On April 5, 2000, Defendant Fischer determined that all four documents met the validation requirement standards, and validated Plaintiff as an associate of the Mexican Mafia prison gang. Plaintiff was provided with a copy of this document.

///

---

[3] Although Plaintiff denies this fact, he has not cited to any admissible evidence which brings the fact into dispute.

6.  On April 11, 2000, Plaintiff was provided with confidential information disclosure forms describing the content of the four documents insofar as possible without endangering institutional security.

7.  On April 20, 2000, Plaintiff appeared before the Institutional Classification Committee for a determination of his housing status based on Plaintiff's validation as an associate of the Mexican Mafia. At the hearing, Plaintiff objected to the decision to validate him, however, despite Plaintiff's objections, the Committee elected to place Plaintiff in the SHU at Pelican Bay State Prison.[4]

8.  Plaintiff was transferred to Pelican Bay on January 2, 2001.

9.  Plaintiff appealed the determination that he was an associate of the Mexican Mafia prison gang.

10. The appeals office conducted a review of Plaintiff's validation, and decided that the information contained in the August 7, 1999, memorandum was insufficiently clear to establish that Plaintiff was conducting an assault ordered by the Mexican Mafia. Therefore, on August 5, 2002, the appeal reviewer issued a Modification Order directing the IGI at Pelican Bay to delete that one of the four documents in Plaintiff's gang validation package, and re-validate him based on the remaining three documents. This order was carried out on August 26, 2002.

11. Plaintiff filed a petition for a writ of habeas corpus in Del Norte Superior Court, claiming that he had been denied his right to procedural due process of law associated with his validation as a gang member.

12. Following Judge Follett's order in Plaintiff's habeas action, the Pelican Bay IGI Lieutenant expressed concerns that one of the three remaining documents describing Plaintiff's gang activities could be interpreted as involving a street gang rather than the Mexican Mafia prison gang, and that much of the information pertained to inmates other than Plaintiff.

///

---

[4] Plaintiff denies this fact. However, none of the evidence cited to by Plaintiff brings this fact, which is supported by documentary evidence, into dispute.

Based on this review the IGI Lieutenant decided not to include that document in the gang validation package.

13. On April 13, 2005, the LEIU deleted Plaintiff's validation as an associate of the Mexican Mafia prison gang, because his gang validation package only contained two items, which was one fewer than the three required by the California Department of Corrections and Rehabilitation (CDCR).

14. Throughout Plaintiff's gang validation process, and during his appeal of his validation, he was provided with access to the non-confidential portions of his central prison file.

15. Because Plaintiff was being housed in administrative segregation (ad-seg) due to an ongoing investigation in which he was the victim, he received a review of his placement in ad-seg on March 8, 2000. In the March 8, 2000, notice of ad-seg review, prison officials explained to Plaintiff that he was under review for possible association with the Mexican Mafia prison gang. He was then provided with a hearing on March 9, 2000, concerning his placement in ad-seg.[5]

## C. Claims Arising from Denial of Due Process

At issue in this action is whether Plaintiff was validated as a Mexican Mafia associate and assessed an indeterminate SHU term without due process of law. The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). The Due Process Clause itself does not confer on Plaintiff a liberty interest in avoiding "more adverse conditions of confinement." Id.; Hewitt v. Helms, 459 U.S. 460, 466-68, 103 S.Ct. 864 (1983). "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in

---

[5] Although Plaintiff denies this fact, he has not cited to any evidence which brings the fact into dispute.

7

relation to the ordinary incidents of prison life.'" Wilkinson at 223 (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)). State-created liberty interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin at 484.

In finding that Plaintiff's due process claim was cognizable, the Court assumed that the assessment of an indeterminate SHU term implicated a protected liberty interest. In their motion for summary judgment, Defendants do not advance the argument that Plaintiff did not have a protected liberty interest at stake and therefore, in resolving Defendants' motion, the Court again assumes the existence of a protected liberty interest.

The assignment of validated gang members and associates to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing to Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986)). In addition to these minimal protections, there must be "some evidence" supporting the decision. Id. (citing Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985)). Plaintiff challenges both the procedural protections provided and the evidence used against him.

### 1. Notice and an Opportunity to be Heard Concerning Validation

The minimal procedural protections require only that Plaintiff be provided with "an informal nonadversary hearing within a reasonable time" after segregation, notice of the charges or reasons for segregation, and an opportunity to present his views. Toussaint, 801 F.2d at 1100. Because the IGI was the decision maker with respect to validation of inmates as gang members or associates, due process required that Plaintiff be provided with an opportunity to present his view to the IGI. Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1991). Plaintiff was not entitled to detailed written notice, representation, the opportunity to present witnesses, or a written decision regarding the reasons for placement. Id. at 1100-01. Further, "due process does not require disclosure of the

///

identity of any person providing information leading to the placement . . . in . . . segregation." Id. at 1101.

Defendants' position is that due process was satisfied because Plaintiff was notified he was under investigation, and he received hearings regarding his placement in ad-seg. Defendants contend that because the validation package was not submitted until March 15, 2000, and Plaintiff attended a hearing on his placement in ad-seg on March 9, 2000, he had an opportunity to be heard prior to his validation.

Due process is flexible and what protections are due is dependent upon the particular situation. Toussaint, 801 F.2d at 1098 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893 (1976) (internal quotations and citations omitted), and in order to enjoy the right to be heard, notice must first be given, Wilkinson, 545 U.S. at 225-26. Once an inmate is validated, left is the housing placement determination. (Undisputed Facts 5, 7.) Because the validation itself is the critical decision in the process, Plaintiff was entitled to notice and an opportunity to be heard on the issue of his validation *prior to* his validation.

Defendants have presented no evidence that prior to his validation, Plaintiff was provided with a meaningful opportunity to be heard on the issue of his validation. The hearing held on March 9, 2000, concerned Plaintiff's continued retention in ad-seg, which is not an issue in this case, and while Plaintiff's pending gang validation was referenced, it was in the context of informing Plaintiff that he would be retained in ad-seg pending completion of the validation process. (Def. Ex. 6.) The hearing was not held to provide Plaintiff an opportunity to be heard on his gang validation. (Id.) For these reasons, the Court finds that Defendants have not met their burden as the moving parties and recommends that their motion for summary adjudication as to the procedural component of Plaintiff's due process claim be denied.

### 2. Some Evidence in Support of Validation

Plaintiff alleges in his amended complaint that he was validated based on untrue, unreliable, and erroneous confidential information, which he was not allowed to view, and that the evidence relied upon does not constitute "some evidence." (Amend. Comp., court record pgs. 24 & 26.)

9

Plaintiff denies being a gang associate and alleges that he was validated based on his innocent association with members of his racial group. (Id., pg. 7.)

Defendants argue that the evidence used to validate Plaintiff was more than sufficient to meet the "some evidence" standard. Plaintiff was validated as a Mexican Mafia associate based on four source items, and his validation was later set aside because two of the items were deleted from his validation package and state regulations required three source items. (U.F. 4, 5, 10, 12, 13.) Defendants argue that any one of the four source items was sufficient to satisfy the "some evidence" standard, and that because federal law does not require three source items, even if the Court does not consider the two deleted source items, either of the two remaining source items was sufficient to satisfy due process.

Plaintiff argues that the confidential information used to validate him was unreliable, and that two of the four source items were subsequently deemed unreliable by prison officials. (Doc. 104, Opp., c.r. pg. 10, ¶13.) Plaintiff argues that confidential sources are required to have firsthand knowledge in order for reliability to be established, and that the defendants did not fulfil their duty to screen informants and ensure their reliability. (Id., pg. 9, ¶¶5, 7, 8.)

In determining whether there exists some evidence in support of a challenged decision, the Court is not to "examine the entire record, independently assess witness credibility, or reweigh the evidence; rather 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" Bruce at 1287 (quoting Hill, 472 U.S. at 455-56). While Title 15 regulations provide for three pieces of evidence, under federal law, one piece of evidence may be sufficient to meet the "some evidence" standard. Bruce at 1288.

Although discussed in the context of a disciplinary hearing, the Ninth Circuit has stated that under the Hill standard, the evidence should have some indicia of reliability. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). A determination derived from a statement of an unidentified informant satisfies due process when the record contains some factual information from which the decision maker can reasonably conclude that the information was reliable, and the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. Zimmerlee, 831 F.2d at 186 (quotations omitted). Reliability may be determined

in any one of four ways: "(1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) an *in camera* review of the documentation from which credibility was assessed." Id. at 186-87.

Federal law does not require that the evidence relied upon be such that any conclusion other than the one reached by the decision maker is precluded, Hill, 472 U.S. at 457, and in reviewing the evidence relied upon, the Court is mindful that it is not to substitute its judgment on matters such as this for the determinations of those charged with the formidable task of running a prison, Zimmerlee, 831 F.3d at 186.

The Court has before it for *in camera* review Plaintiff's validation package. Of the four source items originally used to validate Plaintiff as a Mexican Mafia associate, two were set aside. The confidential memorandum dated August 7, 1999, was set aside not because it was deemed unreliable but because the information provided by the confidential informant was found to be insufficient to support Plaintiff's association with a prison gang. (U.F. 10; Def. Ex. 8.) The confidential informant was considered reliable and the majority of the information provided by him was considered reliable. (Def. Ex. 8.)

Also deleted from Plaintiff's validation package was the confidential memorandum dated March 8, 2000. (U.F. 12.) This item was deleted because it detailed activity of inmates other than Plaintiff, and because it detailed Southern Hispanic gang activity rather than Mexican Mafia gang activity. (U.F. 12; Def. Ex. 11.) Because there was no new documentation that Plaintiff was participating in Mexican Mafia activity, the lieutenant who was conducting the review of Plaintiff's file stated that prison officials at Pelican Bay State Prison were not going to resubmit a validation package for Plaintiff following deletion of this second item and requested that Plaintiff's validation be vacated. (Def. Ex. 11.)

For the reasons expressed by prison officials in their decisions to delete the aforementioned source items from Plaintiff's validation package, the Court declines to consider them in determining whether some evidence supported the validation of Plaintiff as an Mexican Mafia associate.

However, for the reasons that follow, the Court finds that even with the deletion of two source items, there was "some evidence" to support Plaintiff's validation.

Plaintiff was not validated as a Mexican Mafia associate based solely on information provided by confidential informants. As documented in the confidential memoranda dated November 5, 1999, and December 8, 1999, three notes were confiscated, one from Plaintiff's personal property and two from another inmate. Through the use of more than one confidential informant, it was determined that one note was written to Plaintiff by a validated Mexican Mafia member, one note was written by Plaintiff, and one note was written about Plaintiff, in that order. The notes bear some relation to one another in that they are links in a chain of communication with Plaintiff being the common element. Three out of four informants interviewed provided information which led to the identification of the inmates to whom the letters were written, by whom the letters were written, and who were discussed in the notes.[6] Reliability of informants one and three is established because both previously provided reliable information.[7] Zimmerlee, 831 F.2d at 186. Reliability of informant two is established through corroborating information provided by informant three. Id. Further, the Court has before it the confidential memoranda in their entirety and finds the information documented to be detailed and have the appearance of sufficient reliablity. Id.

Despite Plaintiff's argument to the contrary, the contents of the notes do not support his position that he was not associating with the Mexican Mafia and that he was validating based simply on his innocent association with other Hispanic inmates. The contents of the notes, including the one determined to have been written by Plaintiff, support the determination that Plaintiff was in contact with validated Mexican Mafia members and was maneuvering for control of the yard. This determination was also supported by information provided by informants two and three. In particular, the note determined to have been written by Plaintiff is, by itself, sufficiently indicative of gang association to constitute "some evidence" of association with the Mexican Mafia. The note

---

[6] The information provided by the fourth informant, who had previously provided reliable information, did not involve Plaintiff or Mexican Mafia activity.

[7] The informants are referred to in the order of their interviews documented in the confidential memoranda dated November 5, 1999.

clearly describes receipt of kites by Plaintiff from senior Mexican Mafia members and Plaintiff's intent to control the yard. The note also clearly represents Plaintiff's desire not to be detected or identified as one receiving kites from Mexican Mafia members.

The Due Process Clause does not require that all possible explanations except for the one reached by prison officials be eliminated. Hill, 472 U.S. at 457. The only issue is whether there is *any* evidence which could support the determination that Plaintiff was associating with Mexican Mafia members, id. at 456, and the Court will not substitute its judgment for that of the IGI. In this instance, between the contents of the notes confiscated and the interviews with three confidential informants, there was "some evidence" supporting Plaintiff's validation. Under federal law, that is all that is required and Defendants are entitled to summary adjudication on this component of Plaintiff's due process claim.

**D.    Defendants Travers and Gentry**

Defendants contend that there is no evidence supporting a claim that Defendants Travers and Gentry were involved in validating Plaintiff or assessing the SHU term against him. Defendants contend that absent the submission of some evidence of their involvement, they are entitled to summary adjudication.

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

Section 1983 plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A

person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Plaintiff does not specifically address Defendants' argument that Defendants Gentry and Travers did not have any personal involvement in his validation and SHU term assessment. Plaintiff attests that Defendant Gentry ordered his retention in ad-seg and that he appeared before the ICC on June 22, 2000, where Defendant Travers refused to hear his request for due process and ordered his immediate transfer to the SHU. (Doc. 104, Juarez Dec., ¶¶2, 6.) Further, Plaintiff submits the business record documenting the June 22, 2000, committee meeting. (Id., P. Ex. 8.)

Plaintiff's argument that Defendant Gentry was involved in retaining him in ad-seg is of no assistance to Plaintiff because his retention in ad-seg without due process is not at issue. (Id., c.r. pg. 12, ¶¶3, 4.) Further, a review of the record of the June 22, 2000, committee meeting reveals that the purpose of the meeting was a thirty-day review of Plaintiff's ad-seg placement. Plaintiff had already been validated by that point and the ICC had already recommended assessment of an indeterminate SHU term. Based on a pending Rules Violation Report against Plaintiff for joining other Hispanic inmates in covering their cell windows, the committee recommended a thirty-day extension in ad-seg so that the disciplinary violation could be resolved. The committee also recommended Plaintiff be transferred to Pelican Bay State Prison to serve his indeterminate SHU term.

Plaintiff has not submitted any evidence that Defendant Gentry was involved in validating him as a Mexican Mafia associate or assessing him an indeterminate SHU term. Accordingly, Defendant Gentry is entitled to summary adjudication. With respect to Defendant Travers, documentation of the committee meeting supports Defendants' position that Defendant Schmidt,

14

Chairperson Todd, and Recorder Mitchell were present. (Id., P. Ex. 8.) Based on Plaintiff's citation to the business record in support of his claim that Schmidt, Todd, Mitchell, Travers, and McDill were present, it appears Plaintiff's assertion that all five were present is based on the fact that all five were listed as committee members on the report form. (Id.) However, only Schmidt, Todd, and Mitchell signed the report, which indicates they were the decision makers on that date. (Id.) Further, the record of the committee meeting does not support Plaintiff's attestation that his immediate transfer to the SHU was ordered. In light of the evidence and Plaintiff's failure to address Defendants' argument that the evidence does not show Defendants Travers' involvement in validating Plaintiff or assessing him an indeterminate SHU term, the Court finds that Travers is entitled to summary adjudication on the claim against him.

### E. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity, which shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Remaining at issue in this action is Plaintiff's claim that he was denied notice and an opportunity to be heard prior to his validation. Therefore, the Court addresses Defendants' qualified immunity argument only as to this remaining claim.

In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. In determining whether the right was clearly established, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (internal quotations and citation omitted). In resolving these issues, the Court must view the evidence in the light most
///

1  favorable to Plaintiff and resolve all material factual disputes in favor of Plaintiff.  Martinez v.
2  Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

3  Defendants argue that even if the Court finds that Plaintiff had a right to notice and an opportunity to be heard prior to submission of his validation package to Sacramento, their actions were reasonable and conformed to existing law at the time.  Defendants argue that prior to the September 21, 2004, settlement in Castillo, CDCR did not have regulations requiring inmates be given notice and an opportunity to be heard prior to submission of the request for validation to Sacramento,

9  For the reasons set forth in section IV(C)(1), the facts as alleged show that the failure to provide Plaintiff with notice and an opportunity to be heard prior to the critical decision made against him violated his right to due process.  Saucier, 533 U.S. at 201.  Defendants' argument that they are entitled to qualified immunity because they could have reasonably believed their conduct was lawful in light of the state regulations at the time is unavailing.  Plaintiff was validated and assessed an indeterminate SHU term in 2000.  By 2000, the law was clearly established in this Circuit that at a minimum, federal due process required Plaintiff be given notice and an opportunity to heard by the decision maker prior to the critical decision, which was validation in this instance.[8]  Toussaint, 926 F.2d at 803; Toussaint, 801 F.2d at 1099.  The Court finds that in light of well-established due process principles requiring notice and a meaningful opportunity to be heard, no reasonable official could have believed that validating an inmate without giving him notice and an opportunity to be heard prior to the validation would satisfy federal due process.  Accordingly, the Court recommends that Defendants' motion for summary adjudication on the ground of qualified immunity be denied.

**V.    Conclusion and Recommendation**

For the reasons set forth herein, it is HEREBY RECOMMENDED that:

1.   Plaintiff's cross-motion for summary judgment, filed January 18, 2008, be DISREGARDED on the ground that it was not timely filed;

///

---

[8] Defendants do not argue otherwise.  Rather, they argue only that they could reasonably have believed it was lawful to follow regulations.

16

2. Plaintiff's Rule 56(f) motion be DENIED on the ground the discovery was closed by the time Defendants filed their motion for summary judgment;

3. Defendants' motion to seal, filed October 18, 2007, be GRANTED;

4. Defendants' motion for summary judgment, filed October 18, 2007, be GRANTED IN PART and DENIED IN PART as follows:

   a. Defendants' motion for summary adjudication on Plaintiff's claim that he was validated without notice and an opportunity to be heard be DENIED;

   b. Defendants' motion for summary adjudication on Plaintiff's claim that his validation was not supported by some evidence be GRANTED;

   c. Defendants Gentry and Travers' motion for summary adjudication on Plaintiff's due process claim against them be GRANTED;

   d. Defendants' motion for summary judgment based on qualified immunity be DENIED; and

5. This matter be set for jury trial on the remaining due process claim against Defendants Verdin, Haws, Fischer, and Schmidt arising from Plaintiff's validation and assessment of an indeterminate SHU term without notice and an opportunity to be heard.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **August 3, 2008**            /s/ Gary S. Austin
                                   UNITED STATES MAGISTRATE JUDGE